STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
DANNY JENKINS HOWARD, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 16, 1972—Decided July 23, 1973.

Before Judges COLLESTER, LEONARD and HALPERN.

*Mr. Michael H. Stieber,* Assistant Prosecutor, argued the cause for appellant (*Mr. Joseph P. Lordi,* Essex County Prosecutor, attorney).

*Mrs. Mary A. Aurigemma,* Assistant Deputy Public Defender, argued the cause for respondent (*Mr. Stanley C. Van*

*Ness,* Public Defender, attorney; *Mr. David P. Jacobs,* Assistant Deputy Public Defender, of counsel and on the brief).

The opinion of the court was delivered by

COLLESTER, P. J. A. D. The State appeals from an order granting defendant's motion to dismiss an indictment charging him with the unlawful possession of a straight razor in violation of *N. J. S. A.* 2A:151–41(c).

*N. J. S. A.* 2A:151–41, which prohibits the carrying of dangerous weapons without a permit or identification card, provides in pertinent part that any person who carries on or about his clothes or person, or otherwise in his possession, in any public place, "(c) *Any dangerous instrument of the kinds known as a* * * * dagger, dirk, *dangerous knife,* or knife as defined in chapter 5 of the laws of 1952 [switchblade knife] * * * is guilty of a high misdemeanor." (Emphasis added).

The trial judge dismissed the indictment as a matter of law, basing his decision upon the legislative history of *N. J. S. A.* 2A:151–41, 2A:151–56 and 2A:151–5. He concluded that the Legislature, by deletion of the term "razor" in *L.* 1922, *c.* 138, § 1 (the precursor of *N. J. S. A.* 2A:151–41), intended to remove a straight razor from the list of weapons proscribed under section 41(c) of the statute.

The State contends the trial court erred in so construing the statute. The State argues here, as it did below, that a straight razor is a knife and that the question of whether it is a "dangerous knife," possession of which in a public place is forbidden by the statute, is a factual issue for determination by the jury and not by the court.

We have carefully reviewed the legislative history of the statutes involved, which have been amended and supplemented many times since the first statute, barring the carrying of concealed weapons, (the source of *N. J. S. A.* 2A:151–41), was enacted in 1905. That statute, *L.* 1905, *c.* 172, made it a misdemeanor for a person to carry certain stated firearms or "any stiletto, dagger or razor or any knife with a blade

five inches in length or over concealed in or about his clothes or person." The act also contained an omnibus clause covering any "other deadly, offensive or dangerous weapon or firearm."

In 1922 the statute was amended by the enactment of *L. 1922, c.* 138, § 1. The term "razor" and the phrase "any knife with a blade five inches in length or over" were deleted from the weapons enumerated in the statute and the descriptive term "dangerous knife" was added. The list of the specific weapons proscribed by the statute was preceded by the language "of the kind known as," which was substituted for the omnibus clause. Subsequent amendments were enacted, none of which is here pertinent except to note that the requirement of concealed possession was eliminated and the degree of the crime was raised from a misdemeanor to a high misdemeanor.

We do not agree with the trial court's conclusion that retention of the term "razor" in *N. J. S. A.* 2A:151–56 and 2A:151–5 (and their predecessors) indicated a legislative intent to remove a straight razor from the weapons prohibited under *N. J. S. A.* 2A:151–41(c). Each section of the statute has a significantly different purpose. *N. J. S. A.* 2A:151–56, which was first enacted in 1912, incriminates any person who attempts to use unlawfully against another, or carries or possesses with intent to use unlawfully against another, any instrument or weapon enumerated in *N. J. S. A.* 2A:151–5 or any other dangerous or deadly instrument or weapon. *N. J. S. A.* 2A:151–5, which was enacted in 1927, provides for the imposition of an additional sentence upon armed criminals who commit or attempt to commit stated crimes when armed with or having in their possession "any firearm * * * or dangerous instrument of any kind, usually known as a * * * dagger, dirk, dangerous knife * * * razor, stiletto * * *."

In the recent case of *State v. Green,* 62 *N. J.* 547 (1973), our Supreme Court was confronted with the same argument.

In *Green* each defendant contended his conviction for possession of a dangerous knife should be reversed as a matter of law. They argued that the knives found in their possession were pocket knives having folding blades 3½ inches in length and were not "dangerous knives" possession of which was forbidden by *N. J. S. A.* 2A:151–41(c). In construing *N. J. S. A.* 2A:151–41(c), 2A:151–56 and 2A:151–5 the court said that section 41(c) was intended to prohibit the naked possession of certain concealed weapons and that the offense was to be distinguished from similar crimes where, in addition to possession, there were elements of use, attempted use or an intent to use such weapons. The court pointed out that as to the latter crimes the penalty is not only greater but there attaches to the fact of possession a presumption of intent to use the same in violation of the law.

In *State v. Ryan,* 23 *Conn. Sup.* 425, 184 *A.* 2d 183 (App. Div. 1962), where a similar contention was raised, the court held that the fact a razor was specifically included in a statute making it an offense to carry certain weapons with intent to assault another, while it was not specifically mentioned in another statute making it an offense to carry certain weapons without a permit, did not mean that a razor was excluded from the latter statute — that whether the razor possessed by defendant was a weapon within that provision was a question for the jury.

We also disagree with the argument advanced by defendant on this appeal that the purpose of *N. J. S. A.* 2A:151–41(c) was limited to prohibit the possession of articles designed to be used as weapons *per se.* In *State v. Green, supra,* the court held that such a construction of the statute was too narrow. The court said, "The subject matter of *N. J. S. A.* 2A:151–41(c) logically and reasonably demonstrates a legislative intent to forbid the possession of a larger category of dangerous instruments than those characterized by defendants as dangerous *per se.*" (62 *N. J.* at 560)

It must be conceded that a straight razor is not a dangerous weapon *per se* since it is a domestic tool used for shaving hair from the face or body. However, it is obvious that such a razor, which consists of a thin blade of steel, having a sharp edge for cutting fastened to a handle, must be included in the generic term of "knife." *May v. State,* 110 *Ark.* 432, 162 *S. W.* 43, 44 (Sup. Ct. 1913) ; *Harper v. State,* 133 *Tex. Cr. R.* 255, 110 *S. W.* 2d 67 (Ct. Cr. App. 1937).

In construing *N. J. S. A.* 2A:151–41, which seeks to prevent the carrying of weapons of certain specified categories and thus to prevent their use for criminal purposes, we have held that the statute does not intend to catalogue all the weapons but merely lists under generic terms the common designation of those prohibited. *State v. Green,* 116 *N. J. Super.* 515, 522 (App. Div. 1971), rev'd on other grounds, 62 *N. J.* 547 (1973), *supra;* and see, *State v. Witcher,* 58 *N. J. Super.* 464, 471 (App. Div. 1959). This is clearly borne out by the language "Any dangerous instrument of the kinds known as," which precedes the weapons enumerated in section 41(c).

Thus, while a straight razor, which is a specialized type of knife, may be a domestic tool and not a dangerous knife *per se* when carried for a lawful purpose, that does not mean that a straight razor may not be a lethal weapon and should be excluded as a matter of law from the term "dangerous knife," the possession of which is prohibited by the statute. A straight razor which is not dangerous *per se* will be a dangerous knife within the meaning of *N. J. S. A.* 2A:151–41(c) if the purpose of possession is its unlawful use as a weapon against another person. See *State v. Green, supra,* 62 *N. J.* at 560, and *State v. Ebron,* 122 *N. J. Super.* 552 (App. Div. 1973).

It is to be noted that courts in other jurisdictions have held, under varying circumstances, that a straight razor is a dangerous weapon. See *Williams v. Commonwealth,* 304 *Ky.* 761, 202 *S. W.* 2d 408, 409 (Ct. App. 1947), and

*People v. Morris,* 8 *Mich. App.* 688, 155 *N. W.* 2d 270, 271 (Ct. App. 1967).

The court below indicated that the decision to grant defendant's motion to dismiss the indictment was based, in part, upon the rule of strict construction applicable to criminal statutes. However, that rule does not prevent a court from reading the statute in relation to the mischief and evil sought to be suppressed, or prevent a court from giving effect to the terms of the statute in accordance with their fair and natural acceptation. *State v. Meinken,* 10 *N. J.* 348, 352 (1952). The law does not favor a construction of a penal statute that will aid in its evasion. *State v. Hand,* 71 *N. J. L.* 137, 141 (Sup. Ct. 1904). Statutory language must be given a reasonable construction to promote the efficient enforcement of our criminal law, prevent crime and advance the ends of justice. *State v. Gibbs,* 79 *N. J. Super.* 315, 323 (App. Div. 1963). Applying these principles to the instant case, we conclude that the trial court's construction of *N. J. S. A.* 2A:151–41(c) was contrary to and inconsistent with the intention of the Legislature.

It is a matter of common knowledge that straight razors have been used as weapons for many years in the commission of various crimes. No persuasive reason has been advanced to indicate that the Legislature intended to remove straight razors from the statute prohibiting the carrying of concealed weapons when it enacted *L.* 1922, *c.* 138, § 1. The deletion of the term "razor" must be considered in light of the circumstances that existed 50 years ago. At that time the use of safety razors for shaving had grown in popularity, a fact which defendant concedes. It seems only logical that the Legislature then deemed it advisable to revise the language of the statute to eliminate safety razors from the list of concealed weapons proscribed therein. As a result the term "razor" together with the phrase "knife with a blade five inches in length or over" were deleted from the statute and replaced by the designation "dangerous knife."

 A straight razor, which had been considered a dangerous weapon before the 1922 revision, clearly could not be considered less dangerous after the revision. In our view the term "razor," which had been generally known as a "straight razor," was subsumed in the new designation of "dangerous knife." To hold otherwise would create an intolerable situation. A nighttime prowler bent upon some criminal activity, with a knife concealed on his person, would be guilty of violating *N. J. S. A.* 2A:151–41(c), while another, who had a straight razor so concealed, would go scot-free. We do not believe that such was the intention of the Legislature when it enacted the revision in 1922.

 We conclude that the trial court erred in dismissing the indictment as a matter of law. Whether the straight razor found in defendants possession is a dangerous weapon within the meaning of *N. J. S. A.* 2A:151–41(c) is an issue not to be determined on a motion to dismiss the indictment. It is an issue which must be determined at the trial after evidence is adduced to show whether or not the purpose of defendant's possession of the straight razor was for unlawful use as a weapon. *Cf. State v. Seng,* 91 *N. J. Super.* 50 (App. Div. 1966).

The order dismissing the indictment is reversed and the case is remanded for trial.